JEHU CLENDANIEL and SAMUEL NEALL, trading as CLEN-DANIEL & NEALL, respondents below, appellants *vs.* ANTHONY G. HASTINGS, JOSHUA H. IRONS and BENJAMIN D. BUR-TON.

A merely formal party defendant to a bill in equity, may be examined as a witness by special order.

A bond executed in *blank* cannot be filled up without special authority of the obligors.

Such authority must be proved affirmatively to sustain the bond.

He who takes such a bond, has notice of its defects.

Any alteration, without the knowledge and consent of the obligors, vitiates a bond.

A bond executed in blank by H. and sureties, to enable him to raise the sum of $300, to sustain his credit, was filled up by him for $354, and delivered to C. & N., in payment of a debt: *held* void as to the sureties.

APPEAL from the decree of the Chancellor in and for Sussex county. Heard at the June term, 1853, before Chief Justice Booth and Judges Harrington, Milligan and Wootten.

The bill was filed by A. G. Hastings, Irons and Burton, against Clendaniel & Neall, and Richard F. Hastings, and stated that the complainants, to enable R. F. Hastings to borrow of a certain James Bishop the sum of (about) $300, on a credit of five years, signed a blank printed judgment bond, which they delivered to R. F. Hastings, for that purpose, but that he, failing to get the money of Bishop, went to Clendaniel & Neall, to whom he was indebted, and filled it up, without the knowledge of complainants, for $354, the amount of an old debt due Clendaniel & Neall from Hastings & Dunning, and that Clendaniel & Neall had full knowledge of the facts. Judgments were afterwards entered on this bond against R. F. Hastings and these complainants severally; Hastings became insolvent; and this bill was to be relieved against the bond thus fraudulently filled up and delivered.

R. F. Hastings' answer admitted the facts (substantially) as stated in the bill. Clendaniel & Neall answered that they knew nothing of the signing of the bond; but that R. F. Hastings being indebted to them on his own account, and as one of the firm of Hastings & Dunning, in the sum of $354 48, came to them with the blank bond executed, as he said, to enable him to raise money to any amount not exceeding $800, to sustain his credit; that he expected to get $500 of a friend (Bishop,) but had failed; that he was fully authorized by the other parties to fill up the bond in any sum less than $800, and to any person; that he could so pass it off to his Market street creditors for the amount of their claims, but he wanted some cash, and he proposed to fill up the bond to C. & N. for $500, deducting the debt of $354. C. & N. refused to advance any money upon it, but took the bond on the faith of his representations, for the amount of their debt; and R. F. Hastings filled it up accordingly.

The Chancellor decreed a perpetual injunction to stay execution against the sureties in the bond; from which decree Clendaniel & Neall appealed.

*Mr. Layton* proposed to read the answer of Richard F. Hastings, to which *Mr. Cullen* objected; on the ground that it was not evidence against Clendaniel & Neall, co-defendants. He had to be made a co-defendant with them; but he has taken no appeal, and the judgment stands against him.

*Mr. Layton* cited 1 *Greenl.*, 217, § 178; 2 *Binn. Rep.*, 154, and said that the answer of one defendant is often evidence against the

others; and it was in this case. Also, that the answer being part of the record, as brought up by the appellants, it could not be severed; and that it was read below.

*Mr. Cullen* replied, that he could not bring up a part only of the record; that the answer was properly read below, as against Hastings himself; but it could not be read against the co-defendants, for they had no opportunity to cross-examine him. The complainants counsel took his deposition (under the Chancellor's order) below; it was excepted to and ruled out. If his deposition was not evidence, much less is his answer.

The Chancellor said the deposition was at first ruled out, but it was afterwards admitted.

Richard F. Hastings' deposition was offered and objected to.

*Mr. Cullen.*—The deposition was taken without notice. We had notice of the application to the Chancellor to examine a party defendant; but no notice of the order or of the interrogatories or taking the deposition. We had no opportunity to cross-examine. (2 *Mad. Ch'y*, 314.)

2. Hastings was directly interested in the event of the suit. If the complainants succeed in getting rid of the bond, on the ground of Hastings' fraud, he would be liable to the co-defendant; and if the complainant's case is true, he is liable to complainants. He was also liable for costs. (1 *Smith's Ch. Pr.*, 343; 2 *Mad Ch'y.*, 314; 2 *Daniels' Ch. Pr.*, 1032.)

3. He was a party defendant, and could not be examined, especially against his co-defendants. His answer was replied to; the cause at issue, and he could not be examined after that, even under an order. (2 *Mad. Ch'y.*, 314.)

*Mr. Saulsbury.*—It will be presumed that the Chancellor duly granted the order for taking the deposition of one of the parties; that is, upon petition and affidavit.

2. Testimony in chancery is founded entirely on the question of credibility, and that rests on the question of interest. A party may be examined, as well as another, if this interest does not disqualify him.

Where then is R. F. Hastings' interest in this case? All against the party who examined him. Is it for costs? He is then interested to contradict complainant's case; and so of his interest by reason of the liability over. And if his interest was only equal to either party, he would be qualified to testify.

*Mr Layton.*—1. R. F. Hastings is merely a party for form ; no decree was asked against him; and no decree is made against him, even for costs.   He was regularly examined under the Chancellor's order of which the complainants had notice by the record.   He was therefore examined on notice, and on their general cross interrogatories. . (2 *Mad. Ch.,* 414 ; 2 *Daniels' Ch. Prac.,* 1038.)

*Mr Cullen.*—The complainants were Anthony G. Hastings, Joshua H. Lyons and Benjamin D. Burton—the respondents Clendaniel & Neall and Richard F. Hastings.   The decree was against Clendaniel & Neall, enjoining them to stay proceedings on the bond of complainants, and that the *said* respondents pay the costs.   This extended to R. F. Hastings.

Notice was given of the application for an order to examine R. F. Hastings ; but no notice of the order being made, they were bound to give us notice of the latter, but not of the former. (2 *Mad. Ch.,* 416.)   If notice of the order to examine a party be not served, his deposition cannot be read."   It is true, we had general cross interrogatores, and Hastings was examined on these.   But we had no notice of the order to examine a co-defendant ; there was no list of witnesses ; we could not anticipate the examination of a party ; and could not therefore propose cross interrogatories to suit such a witness.

*The Court* admitted the deposition.

A party who is a merely formal party may be examined as a witness by special order of the Chancellor.   In the English practice, notice of this order is served on the solicitor of the opposite party. Then the party files interrogatories with reference to the witnesses named, a list of whom is furnished ; but here a party always files them in ignorance of what witnesses are to be examined.   It is true that a party could not reasonably presume that a co-defendant would be examined as a witness; but after notice that application would be made for an order for that purpose, he has at least as much notice to shape his interrogatories as in our practice he can have with reference to the witnesses.   Notice of this application was served on the respondent's counsel before the cross interrogatories were filed, viz : on the 24th of February.   The commission issued on the 1st of March, and on the same day an order of the Chancellor was docketed for examining the defendant Hastings.   This was notice to the respondent's solicitor ; and the commission issued, according to the entry on the record, on the same day by reference to date.

The deposition was taken and returned and exceptions filed to it below.  If those exceptions had specified the want of notice to the order for taking Hastings' testimony, we should much doubt the propriety of admitting it as evidence; but no such exception was made below and cannot be made here.  The exceptions were upon general grounds, founded on the witnesses position as a co-defendant, and on his supposed interest in the cause; but he was a merely formal party, against whom no decree was asked, and none made, not even for the payment of costs.  The bill was filed by the sureties of this witness in the bond to Clendaniel & Neall, to enjoin proceedings on said bond against them, but not against him; and if he had any interest it was against the party who called him.  Yet, however this cause may result, the judgment will remain against him, and cannot be affected by the result.

The case was argued in chief by *Mr. Cullen*, for the appellants, and Messrs. *Layton* and *Saulsbury*, for respondents.

The Chancellor assigned the reasons for his decree.

JOHNS, *Chancellor.*—In this case the complainants signed and sealed as sureties a printed form of a single bill, with warrant of attorney to confess judgment, without filling up the blanks, either as to obligee, sum to be paid or time of payment, or date, and delivered the same to Richard F. Hastings, to borrow a sum of money from James Bishop, of Sussex county.  The application having been made by Richard F. Hastings to Bishop, and he not having any money to lend, the object contemplated by the verbal agreement of the parties failed, and the blanks were not filled up.  Hastings retained the printed form, with the blanks not filled up, and in that condition took the paper to Philadelphia, and there offered it to Nathaniel Hickman, informing him of the purpose for which it had been given, and stating his authority to fill up the blanks, and agreeing to fill them up in favor of Hickman, provided he would advance him a sum beyond the amount of his indebtedness.  This Hickman declined, and stated that he could not take the security offered, inasmuch as the blanks had not been filled up at the time when it was signed and sealed by the parties.  Richard F. Hastings being also indebted on his individual account, and as a partner of Dunning, to Clendaniel & Neall, afterwards made a similar offer to to them, and they also refused to loan or advance any money on the security of the instrument; but agreed to take the same in dis-

charge of the debts or amount due them from Hastings and the firm of Hastings & Dunning, and admit that they were informed Hastings expected to have borrowed money from Bishop, but was disappointed; and had also the same instrument in blank as to the date, obligee, sum and time of payment.   Before the blanks were filled, the defendant, Clendaniel, admits that he inquired particularly of Hastings as to his authority to fill the blanks, and was satisfied by his verbal assurance, and confiding in such verbal declarations that he was authorized, he thereupon, on the blanks being filled up by Hastings, accepted from him the instrument, he holds the parties signing it as securities for such a purpose, responsible to the firm for debts antecedently created, and for which they never consented to become sureties, and for an amount larger than they had agreed to become liable, in discharge of a book account.   It is conceded by the transaction, the firm of Clendaniel & Neall obtained from the debtor, Richards F. Hastings, a higher security, legally binding him, and therefore were not prejudiced.   But the complainants, under the circumstances of the case, consider they are entitled to relief, as the blank instrument was in that condition which apprized the party accepting it of its invalidity against them as sureties.   It was therefore only necessary that I should consider whether the complainants were liable as sureties.   It is apparent no money was advanced or loan obtained on their credit, but on the contrary the defendant, Clendaniel, expressly declares in his answer, he refused to advance one cent.   He knew that the paper had been signed in blank, to obtain a loan, refusing to make such loan.

After full consideration of this case, I can discover no analogy to the decisions of cases referred to under the rule which protects purchasers without notice and for a valuable consideration.   Nor does it appear that the parties complainants, by signing the blank printed form, intended to commit a fraud.   They admit the signatures were made by them as sureties to enable Hastings to obtain the loan of money from Bishop, and this they had a right to do; and from the nature of the blanks and the signature being under seal, it was not incumbent on them to give notice to protect third persons from such a a paper, when it was not negotiable.   There was enough appearing on the face of it, independent of its want of negotiability, to guard against deception and induce any person to whom application might be made, to inquire into and be satisfied as to the legality and authority of the party offering it as a security,

either to fill up the blanks or render it valid, as against the parties who had signed their names under seal, leaving the blanks as to sum, date and obligee. It is evident from the deposition of Hickman, that he so regarded the paper, and declined to loan any money on it. And the same appears to have been the opinion of Clendaniel, as he refused to take it as a security for any advance or loan of money, as in his answer he admits, not for one cent. It is apparent that Clendaniel was fully aware the holder of the printed form in blank, notwithstanding its being signed and sealed, could not fill up the blanks nor render it available against the complainants, unless authorized so to do; he therefore questioned Hastings as to his authority. This clearly shows from his own admission, that he was put upon his guard, and if he waived his right to the exhibition of the requisite and legal authority, and chose to confide in the verbal assurances of Hastings, he, with his eyes open, assumed the risque, and should suffer the consequences of his own imprudence, and of the fraudulent conduct of Hastings.

In the case of *Baring* vs. *Shippen*, 2 *Burr. Rep.*, 116, Tilghman, Chief Justice remarks: "who can say that the answer of Cutting is not material to prove fraud? It tends to prove that a bond which was given by Mrs. Shippen to Cutting, for the sole purpose of raising money for her use, was applied by him to the purpose not of raising money at all, but of paying a debt of his own. If Mr. Baring had applied to Mrs. Shippen before he took the assignment, (which in prudence he ought to have done) he would have found at once that Cutting was acting a fraudulent part, and the mischief would have been prevented; not having done so, he took the assignment at his peril, and has no right to complain of the defence set up against him." In the same case Yates, J., says: "the general matter contained in the answer or depositions of Jno. Brown Cutting (the assignor) might well be given in evidence. They tended to avoid the bond, by showing it was made use of for a very different purpose, from that for which the deed was executed by the defendant. It is clearly settled that an obligation in the hands of an assignee, is subject to all the equity which could have prevailed against the original obligee." If then a bond executed by A. to B., for the purpose of raising money on it by B., as the agent of A., being assigned by B., in payment of the debt of B., cannot be valid against A., by the assignee; because applied to a purpose different from what was intended by the obligor. It would appear conclusively to

follow, that a printed form of a single bill, signed and sealed by persons as sureties, blank as to obligee, sum and date, for the purpose of enabling the principal to borrow money from a particular person, when applied by such person in payment of a pre-existing debt due to a different person, cannot by such obligee be enforced against the sureties.   It would be the duty of the person to whom such an imperfect instrument was offered, to inform himself before accepting thereof.   But when by the answer of the obligee and the answer and deposition of the principal, it is conceded and proved that the obligee was aware of the purpose for which the blank instrument was originally signed and sealed in blank, and had refused to advance one cent on the credit thereof, the subsequent acceptance thereof for a different purpose, and filling the blanks for such purpose and larger amounts, cannot avail the party thus acting, as against the complainants.   They had agreed to become sureties for a very different object and amount, and never contemplated becoming sureties for any of the existing debts of Hastings, nor for the amount or sum inserted ; who, by executing and delivering the single bill to the firm of Clendaniel & Neall, bound himself and no one else.   Hence I consider, under the circumstances of this case, that the transaction as against the sureties was fraudulent, and that they were entitled to relief, and, therefore decreed that the defendants, Clendaniel & Neall, should be perpetually enjoined from any further proceedings at law to collect the debt due from Hastings from the complainants, Anthony G. Hastings, Benjamin D. Burton and Henry Hickman, administrator of Joshua H. Irons, or either of them, by virtue of the said single bill, or the judgments entered thereon against the said complainant, or the execution process issued upon said judgments; and that the defendants should pay costs.

*By the Court.*—The complainants are properly in this court, on the ground of fraud.   The allegation of the bill is not merely a denial of the bond, as the deed of complainants, but it charges fraud and collusion between Richard F. Hastings and the other respondents, in filling up and using the bond for other purposes than those for which it was executed.   Their case is, that they executed the bond in blank form, for the purpose of enabling R. F. Hastings to procure the sum of $300 by way of loan, from James Bishop, on a long credit ; and that, failing in this, he, without their knowledge or consent, filled it up to the respondents for a larger sum, on a

short credit, and in payment of an old debt due from himself individually, and another firm, of which he had been a member.

Without particular reference to the proof to examine how far this case is sustained in reference to the fraud, it may be decided on a general principle which avoids this bond as to the sureties. When a person takes a bond executed in blank, he is bound to inquire of the authority to fill up and deliver it. Such a paper is not a negociable instrument ; it is a deed which has effect only on delivery, and no delivery could be without the express assent and authority of the obligor. That authority must be proved or the bond is a nullity. The execution of the bond in blank does not import an authority in the holder to fill it up and deliver it at pleasure ; on the contrary, this circumstance is enough to put every one on his guard against taking it, without express reference to the obligors. If filled up at the execution, the slightest alteration by a party interested, without such reference, and consent of the obligor, would avoid the bond ;, and, a fortiori, when the entire filling up and delivery are without such reference and consent.

Whether Richard F. Hastings misrepresented his authority to Clendaniel & Neall or not, they were bound to know that this deed of the sureties could not be filled up and delivered to them upon terms differing, even by the admissions of the answer, from what they knew was its original object, without the express authority of the sureties. And that they, as well as Mr. Hickman, did know this, is apparent from their refusal to advance any thing upon it as security. They took it merely to secure old debts, and were placed in no worse condition as to them, whether the bond is good against the sureties or not. It secured them a judgment against R. F. Hastings, for their back debt.

It is the unanimous opinion of the court that the decree of the Chancellor be affirmed, with costs.

*Mr. Cullen,* for appellants.

Messrs. *Layton* and *Saulsbury,* for respondents.